Mokphy, J.
delivered the opinion of the court.
The petition charges, that plaintiff’s slave, a cook, having absconded from him, was found on the 29th of May, 1839, in the employ of J. B. Hawks, master of the schooner Molaeska, lying in the port of New Orleans, and about to sail for Tampa Bay or New-York; that said slave was and had been for some days employed by said Hawks as cook on board the schooner, and was so employed without the knowledge or consent of the petitioner; and to his damage in the loss of time and the diminished value of his slave, in the sum of one thousand dollars. The petition concludes with a prayer for a provisional seizure of the vessel, to secure his lien on her, and for a judgment in solido, against her master and owners. To this petition the defendants filed separate exceptions. The master put in a plea to the jurisdiction of the court, which was overruled; and the defendants demurred to the sufficiency of the matters set forth by plaintiff, as furnishing against them any right of action. This last exception having been sustained, plaintiff appealed.
From the averments in the petition it is clear, that the owners of this schooner are sought to be made liable, not on a contract made by the master in the scope of his powers, but for a tort by him committed, to wit: the receiving and employing of a slave on board, without the consent or knowledge of his master, in violation of our laws. The petition does not allege, that this illicit act, which has caused injury to plaintiff, could have been prevented by the owners, and that they have not done it. Under the repeated adjudications of this court, and a positive provision of our laws, the averment and [550] proof of this circumstanoe is necessary to render principals accountable for damages, resulting from the acts of their agents. La. Code, .art. 2299 ; 1 Moreau’s Digest, 119 and 121, 379 and 380; 8 Martin, H. S. 504; 8 La. Bep. 537.
The statute of 1837, which is relied on as giving plaintiff a privilege on the schooner, and as establishing the absolute liability of her owners, cannot, in our opinion, be made to apply to the oase before us. It declares, that if any slave or slaves be carried out of this State, or from one part of the State to another, without the consent of the owner, in addition to the remedy alalready given to the owner of said slave or slaves, against the persons mentioned in the act, approved the 13th February, 1816, the owner shall be en *703 titled, besides, to sue the owners of said steamboat, ship, vessel or other water craft, and to recover the full value of the slave or slaves so carried away, with damages, and the said owners shall be considered bound jointly and severally to mate good such claim. See Acts of 1835, 152, sects. 1 and 2.
From the express terms of this amendment to the law of 1816, it is clear that for the greater protection of this species of property, the legislature in-' tended to render absolute and unconditional the liability of .owners of vessels in two cases, to wit: when a slave is carried out of the State, or when he is removed from one part of the State to another, leaving in all other cases, the law as it stood before in relation to the liability of such owners for the acts of their agents, and to the remedies already given by existing statutes. In the present case, the slave, who had only been employed on board a few days, was recovered by plaintiff; the master was undoubtedly liable to him in damages, independent of -the criminal prosecution, to which he had subjected himself by his unlawful act; as to the owners, their exception appears to us to have been rightfully sustained.
The judgment of the district court is therefore affirmed with costs.